The next matter on our calendar is United States v. Zanes-Skyers. Good morning, counsel. You may proceed. Oh, good. Okay. Well, excuse me. I can't read with my glasses on, and you're a little blurry with them off, but I can see well enough, I think. Blurry is an uptick for me. I know the feeling, believe me. This is actually a pretty straightforward case compared with some of the complexities you've been dealing with earlier. My adversary and I, we agree pretty much on the basics, which is that there was a conspiracy to import drugs from San Lucia to the U.S. The conspiracy involved at the least someone named Nikki in San Lucia who provided the drugs, and there must have been a willing partner in the U.S. We agree that my client hired basically a virtual stranger named Silvera to fly to San Lucia, bring back what they agreed would be basically smuggling cash. That's what they told him. That's what they told him. At some point he knew it wasn't cash. He never knew. He believed. He said when he dropped the suitcase. He said he had trusted partner. There was no one who ever said to him that he was bringing in drugs, and there were no drug-related conversations between my client and anyone, at least in terms of the evidence that was produced. My client offered to give him a ride home from the airport, and then Silvera was arrested. Now, this is where we part ways. The government says that it's completely plausible to believe that Silvera was sent on this mission without knowing anything about what the actual cargo was going to be, but that it's completely implausible that my client was in more or less the same position. Well, you left out one fact, I think. Which is? A witness overheard a voice on the phone that he identified to be your client saying he got out already, which would imply this was not smuggling cash. This was smuggling drugs because you don't get out quick when you're smuggling that. With all due respect, first of all, I don't know that that's true, that you don't get out quick. I have clients that have had very small incidents that they don't have bail. They don't get out. If they're, you know, indicted for something, they can be quite minor. And second of all, we don't know, first of all, we don't really know whether it was my client, but assuming for purposes of the argument. That's the one that it was, and we draw all inferences in favor of the government. Right. He said it sounded like him. Is your theory that your client was also a cab spore? There was someone else? Here's my theory. It could have been. It is plausible that my client was a drug dealer who hired this stranger to pick up drugs in St. Lucia. It's equally plausible that my client was someone who, just like Silvera, was hired to do a discreet job, which is can you get me someone who will go to St. Lucia and bring back some cash? But isn't that what the jury is for, to decide whether it's... Sure, if they're, but you can't say someone is probably guilty. They don't have that opportunity. Right, but they heard all the facts, and they found beyond a reasonable doubt, I'm assuming. We argue that the evidence was insufficient for that finding. There would never be a sufficiency argument ever presented to you except where a jury has found guilt. Otherwise, we wouldn't have to be here. The prosecution presented the case as that our argument was actually that it was drug money that was flowing in, and that the way that the jury should understand that his version was wrong is that money doesn't, drug money doesn't flow in. Well, that was not our argument. It was a disingenuous argument to make to the jury. The expert should never have been permitted to make that, to testify about that, because it was whether money flows in or out of the, well, whether money flows into the United States had nothing to do with the case. You know, we were never arguing that it was drug-related money. We were arguing... Weren't you arguing that it was money, that it was... Yes. Because... You know, it was, you know, people do smuggle money into the United States for a variety of reasons, for laundering, or because it's way above the limit. You know, there are, it's a federal offense to smuggle in money. It doesn't have to do anything with drugs. And that was the argument that was made, but it was mischaracterized, so it gave the jury a reason to think, well, that doesn't make sense, then. If drug money doesn't come into the U.S., then he must have been, it must have been drugs, which was incorrect, as well as, as we mentioned in our brief, also not true. Drug money can flow into the U.S. and does. Not always, but it happens. Were you able to put on evidence about that? Pardon? Were you able to put on evidence that drug money does, occasionally? No. We were arguing that it wasn't drug money. And your client never suggested to you, I don't want to invade lawyer-client privilege, that he was just a guy that got caught in this deal and there was someone else that he was responsive to? Your Honor, because I'm an appellate attorney, I don't have those kinds of discussions with my clients, any of my clients, over the past, like, 40 years. Yeah. I really can't say. So you do this based on the record? I do this only based on the record, and based on the record, there just wasn't enough evidence to prove one way or the other. Thank you. Thank you, counsel. We'll hear from the government. May it please the Court, David Gopstein for the government. I represented the government at trial. The district court was correct in denying the defendant's Rule 29 motion, because there was sufficient evidence from which a rational jury could conclude that the defendant knew that the object of his conspiracy was drugs. What was that evidence? That evidence, Your Honor, which was essentially undisputed, was that the defendant is the one who recruited the courier to fly to St. Lucie. I think they all agree that he recruited him. But he recruited him to allegedly bring in money. That's what he said, Your Honor. That's right. But what actually happened is that the courier flew to St. Lucie, a place to which he had never been, was introduced to an individual referred to as Nicky. Again, undisputed that the person who put the courier in touch with Nicky was the defendant.  Nicky was the drug supplier from St. Lucie. He gave him a bigger suitcase. Correct, Your Honor. Than the one he had bought himself. Correct, Your Honor. It was the defendant who put the courier in touch with Nicky in St. Lucie. And again, Nicky was the person who provided, who was the drug supplier. The defendant paid the courier. The defendant paid the courier's airfare. The defendant said he was going to pay the courier. How is that as consistent with him bringing in money, that he would pay the airfare if he was doing a run for him, a money run, as opposed to a drug run? Consistent, Your Honor, with the defendant having an interest in the object of this conspiracy. That's an inference of knowledge that the jury could have drawn. That's an inference of knowledge that this court has recognized in other cases where a defendant's knowledge was the question in dispute. There was also no dispute that the defendant came to JFK Airport. He drove hundreds of miles from the Boston airport. Which you wouldn't do if you could avoid it. You wouldn't want to go to JFK. The defendant, in fact, arrived late, and it was the courier who was arrested at that time, but there was no dispute that the defendant arrived at the airport to meet the courier, and there really was no dispute at trial, Your Honor, that the defendant wasn't just coming to pick up the courier, and that he wasn't just coming to pick up the suitcase, that he, in fact, was going to open that suitcase. Defense counsel at trial argued to the jury that this case was really like one in which a defendant made an order, picked up the package that he ordered, opened the package, and then was surprised by what was inside. And so it was really undisputed that the defendant not only was going to have sole possession of the suitcase, but that he was going to open it. Now, these are all facts that, while they're undisputed, they were facts from which a rational jury could conclude that the defendant knew that the $50,000 Wouldn't he have been interested in opening it if it was money, if it was $40,000 in cash? He would have been interested in that, too, wouldn't he? Well, under that circumstance, Your Honor, the defendant would have opened the suitcase and been completely shocked to find, if he really thought that it was cash, he would have opened the suitcase, something that he paid for, something that he sent somebody to St. Lucia to bring, and then he would have opened it, and he would have said, oops, I didn't get $50,000 of cash or $60,000. Instead, I have up to a quarter million dollars' worth of cocaine. And so it was rational for the jury to conclude that that was an impolite We don't have his reaction anyway when he opened the suitcase, do we? We do not, because he was late to the airport. He was calling the courier and he said, I'm late. I will reimburse you if you take a taxi somewhere else. And he was calling and he was calling, and the courier ultimately stopped responding because he, in fact, was arrested with the drugs. But all of these undisputed facts, Your Honor, are ones that, given the facts of this case, it was rational for a jury to conclude, led to the defendant's knowledge. And there are also instances that this court has recognized in other cases. You've also left out the statement about how did Silveira get out so fast, which seems to be consistent with understanding that when you get arrested at the airport with a bag full of drugs, you tend not to get out very quickly. Yes, Your Honor. I mean, that is the only statement that we have from the defendant after he learned that the courier was arrested. He expressed his surprise that the courier was arrested. He also doesn't express, at least on that, there's no evidence in the record that other than that statement, he didn't say, oh, how did he end up with drugs instead of money? He said, how did he get out so fast? That's another fact when looking at the totality of the facts here from which a rational jury. I understand if that's what you base it on, how did he get out so fast. Your Honor, if that were the only fact in this case, I agree with you. But given all the other facts leading up to this, given the defendant's managerial role, given that he was the only one who recruited the courier, given that he paid the courier, given that he was the person who was going to accept this package and open it, it adds to the totality of the facts from which any rational jury could conclude that the defendant knew what it was that was going to be in that suitcase. I don't disagree, but it is piling inference upon inference upon inference. I don't believe it is, Your Honor. These are independent inferences, each one of which on their own rationally can lead to knowledge. And so the defendant's payment to the courier, his investment in this conspiracy, is an undisputed fact which provides an inference of knowledge. The defendant's controlling of the courier, recruiting him, introducing him to the supplier. That is an independent, undisputed fact from which a jury could rationally infer knowledge. The undisputed fact that the defendant was going, at a minimum, a prospect, but in fact intended to have sole possession of this suitcase, is an undisputed fact that this Court has repeatedly recognized as a permissible inference of knowledge. Did Silvero testify? Silvero did testify. And did he testify that he knew it was drugs at some point? He testified that when he went to St. Lucia, he thought it was money, because that's what the defendant told him. And then at some point while he was there, he realized that he likely was not bringing back money. He dropped the suitcase and he said, be careful with that? So they took his suitcase, took out and leaked it to the supplier, put his luggage into a separate suitcase, which fell onto the ground, and said, be careful with that. And at that moment he said, it's probably drugs? He said to himself? He said that. What did he testify to? He testified that when he arrived in St. Lucia, he was immediately asked for cash, which struck him as odd. If he was going there to be part of a money laundering conspiracy, why are they asking me for cash? And then he testified that the day before he was about to fly back, the incident with the suitcase happened. And so when he arrived, he in fact had the cocaine as opposed to any cash. And why was he pinpointed by the police at the airport? Do you know what triggered the suspicion? I'm not sure, Your Honor, if it was a routine border search, but he was pulled over during the ordinary course by CBP officers of an incoming flight from St. Lucia. His suitcase was searched. But do they search everyone who flies in from St. Lucia? I don't believe they search everyone, Your Honor. Sometimes there's none on the record, but sometimes there's tips. Sometimes there's not. Sometimes it's random. Sometimes they look at when a flight was purchased. I think there's all sorts of factors that lead to when a particular suitcase was purchased. Some countries are more likely to import cocaine than others. With regard to briefly the expert's testimony, the majority of the expert's testimony was not challenged below and is not being challenged on appeal. Was he an expert on drugs, the way drugs and money move?  Yes, Your Honor. And how did he become an expert on how drugs and money move and in what direction? Based on his extensive experience, Your Honor, and of course regularly I believe can qualify an expert in the drug trafficking industry in particular. Was he qualified as a drug trafficking expert? He was, Your Honor, without objection. He testified to how drug trafficking networks work. He testified to the flow of money. And those were areas within his area of expertise. Very powerful. When Schuyler's case was that it was money, to the best of his knowledge, very powerful that this expert says, but money doesn't move that way. I mean, that's almost dispositive testimony. What he testified to was the way that drugs are imported into the country, and what he said was that in his experience he had not seen the reverse, in which money comes into the country in exchange for drugs. That was his testimony. That was based on his experience. It certainly wasn't error. The district court should not have sous-esponsé found that this was unreliable. And given the fact that a drug conspiracy existed in this case and the issues involving drug and money, it was appropriate for the expert to testify as to how drugs and money flow within a drug trafficking conspiracy. Thank you. Thank you. Counsel, you have two minutes. It would have been relevant if my client had been arguing that he was smuggling in drug money, but that was never, never the argument he made, never the argument his attorney made. And just to go back. So the jury has heard testimony about how drugs come into the country, and you think it's improper for the government to just ask as a follow-up in case the jury might be confused. Does it ever go the other way? Yes, I do think it's improper. What was the relevance? It was ineffective assistance not to object, and it was clearly erroneous for the judge not to have sous-esponsé objected. I wouldn't go that far because the defense attorney did argue, object that the expert was being permitted to go too far afield, and I think this would be covered in that. He didn't specifically point out this particular thing. But the other thing you have to understand is that had it just been the testimony, it wouldn't have made perhaps as big a difference. But my adversary told the jury, there are five reasons you know that this wasn't about money, and one of the five reasons is that Detective Hernandez told you it doesn't happen like that. So the importance of his testimony certainly got highlighted in a way that perhaps the defense attorney wasn't expecting. I just would like to go back to something that's clearly on your mind, Your Honor, about the phone call where my client said he got out so fast. The phone call was not to Silvera. Silvera was in a car being driven by a compatriot. Silvera identified the voice, right? Right. So that aside, obviously there was some relationship between Silvera, the driver, and my client because my client called the driver. He didn't call Silvera. So this is a Jamaican community. There's no reason not to presume that everyone in that circle didn't know what had happened to Silvera. Obviously the driver knew. The driver was friends with my client. So there's just no way of saying that because they had this conversation, my client knew about the drugs because he had already known they were going to be in the suitcase as opposed to my client knew about the drugs because someone in the community had been arrested and it was the talk among their circle. And just as the driver knew, so my client knew. So I just wanted to clarify that for you. Silvera was arrested and let go immediately, right? I think after two days. I might be wrong about that, but after a day or two. He was in the car that was picked up. No, he was never. He never got in the car. My client never picked him up. There was no evidence in fact of whether my client was in the car with 10 other people or whether he was alone. There was no evidence of sole possession or that it was intended that he have sole possession. My adversary states it as fact, but in fact it's an evidentiary void. It's possible. I'm not saying it's not possible, but there's just no evidence one way or the other. There's no way you can conclude from the government's case that he went there with the intention of taking the suitcase and that he was alone or that he... He drove from Boston to New York to pick him up at the airport. He did. He had hired this guy to go do this trip. Silvera paid for his trip and then my client was going to reimburse him. If my client was in the middle range so that he had been hired by someone else... There's no evidence that he was in the middle range. There's no evidence that he was in any range. I guess maybe ask below, your predecessor asked the jury to infer a middle range. No. But there's no evidence of a middle range. The only evidence is that your client asked Silvera to go to St. Lucia with a suitcase and to come back with food. Unfortunately for us, your Honor, we have no burden of proof in this case. It was not our position to prove where my client was on a hierarchy, if anywhere. And what I've been trying to say to you is, yes, maybe he was a drug dealer who was either the top banana or up there or just like Silvera. He commissioned the trip, right? He hired Silvera to go do the trip. There's no evidence that he knew Nicky. He gave him the phone number. There's no conversations between him and Nicky. There's no drug conversations. Well, there's no conversations with my client and anybody except for Silvera and their conversations were all related to arranging to pay for the trip. No conversations about drugs. And I'm not saying that they talked in code. I'm saying there was no conversations. And Silvera testified that food was a Jamaican slang word for money. So the fact that they used the word food just supports our position. I'd also just like to, at trial, Silvera was asked, at this moment, do you believe Skyers was asking you to bring money? And he said yes. At the time of trial, he still believed that Silvera was thinking of bringing in money. So it's not that we take a position one way or the other as to what could have been happening. Our position is simply that all of the indicia that you rely on to prove knowledge and intent were missing in this case. There was no phone calls. He had no drug-related conversations with anyone. There was no evidence of what his relationship was with Nicky, if he even had a relationship with Nicky or how he knew about him. There was no evidence that he was ever going to be alone with the suitcase and just nothing to prove what his role in the ordeal was. Thank you. Thank you both very much. Interesting case.